We're ready when you are. Thank you, Your Honor. May it please the Court, my name is Tim Dolan. I'm an attorney on behalf of Omaha Police Officer Justyn Riley, who is sued for violating Mr. Fitil's right to remain free from excessive force, along with his right to free expression under the First Amendment. By way of brief roadmap for my argument, I'd like to give a brief factual background and then discuss generally the purely law issues that are at issue in this appeal, but then need to raise an issue off the cuff regarding the retaliation argument. We've read your 55-page brief. Why do you have to start with a brief recitation of the facts that probably aren't 20 pages? That is correct, Your Honor. They are. And the facts for the breadth of coverage that they have received in the briefs are very straightforward. This is a police demonstration case that happened in the wave of protests across the country following Mr. Floyd's death here. And the Court has already entertained at least one case out of within about a quarter mile of this location when it issued the Cuff v. Sarpy County opinion about a month and a half ago. But briefly going back, Your Honors, to my overview, the retaliation piece in Mr. Riley's brief, one of our main arguments is that Mr. Fatil was not engaged in protected activity and that that is a pure question of law. However... Wasn't he holding a sign, though? Or am I wrong about that? He was holding a sign, Your Honor. And isn't that First Amendment activity? It is, Your Honor. Okay. Before I delve further into it, I need to disclose that in the course of preparing for this argument today, I realized that before the district court, Officer Riley did not argue that Mr. Fatil was not engaged in protected activity at the time he was struck with the flashbang grenade. So, although the qualified immunity appellate standard is fairly well worn, the failure to challenge the purely law question that was never presented to the district court, it is not the same de novo review that the rest of the legal questions this appeal will warrant. Well, to get to the meat of the issue, at least on that, if we were to reach the straight-up constitutional violation, it seems to me like he was engaged in First Amendment activity because he had a sign. And then the question becomes, was his First Amendment activity the causation of throwing the flashbang to him, which is sort of like the more open question based on the record. Am I reading this right or am I wrong about that? Your Honor, you are reading the latter portion correct as far as the causation piece. The first part about the protected activity, however, Mr. Fatil did testify repeatedly that as debris was being thrown, the Omaha police in the area responded by firing pepper balls into the crowd and he left where he had been holding his sign and went over to shield those people. At that point, it is well-settled law that pelting police with debris of any sort is not protected First Amendment activity and therefore... No, no, no. It's not. You said that backward. The people firing the pepper balls are not engaging in the protected activity. No, Your Honor. I think that I said peppering the police with debris. So I need to clarify my verbiage and I apologize for that. Throwing hurling debris at police is not protected activity. That is very well-settled law. Was Fatil doing that or was he just protecting them? Because that at least brings up a genuine issue of fact about what was going on and what Fatil was doing. Viewed in a light most favorable to Mr. Fatil, he was not hurling debris. He went over to shield people in the area where pepper balls were being fired in response to the debris that was coming to police as well. So then it brings up the question, I mean, again, we'd have to make some inferences here, but it brings up the question, was he being pelted or, you know, hit with a flashbang because of his earlier speech holding up the sign or was he being hit with the flashbang because he was protecting the others, which you're right, may not be First Amendment speech. But isn't that a genuine issue of material fact for the jury to figure out? Your Honor, it's still a law question as to whether the act of going to shield people was protected speech in the beginning. And then given the fact that we're in the qualified immunity context, there would have to be clearly established law that warned a reasonable officer in Riley's position that it was a First Amendment violation to strike somebody with a flashbang when it is inconclusive as to whether they are engaged in protected activity or not. But retaliation doesn't actually happen immediately. I understand that the longer that goes by, the less there's a causal link. But, you know, I've watched the video. This happened within, you know, maybe a minute, minute and a half. And so, you know, you're right, he was doing something else, just holding the sign at that point, at least according to the video. But that doesn't mean that the officer didn't retaliate against him for his earlier speech. Your Honor, there is not a dispute of fact as to whether Officer Riley was even aware of the misdemeanor. Well, where's the district court's error? The district court seemed to think there really were disputed facts here that made summary judgment inappropriate. What false conclusion did the district court make? Well, Your Honor, first was the plain error in concluding that Mr. Fetteel was engaged in protected activity to begin with. Other than that, the district court was not. But wouldn't there need to be facts determined to make the conclusion that there was no First Amendment activity? We're looking at the facts in a light most favorable. Everything has to be given to Mr. Riley's record. And the video does not blatantly contradict his testimony that he was being struck by pepper balls about his clavicle and above as the flashbang hit him. So, it was instantaneous as it was going on. So, the district court... It doesn't also clearly show that he was not one of the...could not be perceived as one of the rock throwers. Your Honor, yes, we would concede that he was not one of the rock throwers. But stepping in front to shield potential rock throwers so that police could not disperse them from the area is not protected First Amendment activity. And that's...there is on the record in the district court did find that people... You know, we have dispersal precedents that nobody cites here. Your Honor, Officer Riley did heavily cite dispersal precedent in his seizure argument. Not as much in relation to the First Amendment piece. But again, going back to Judge Strauss's question, there would have had to be clearly established law warning an officer that in a toss-up situation where somebody may or may not be engaged in protected activity, that it is unlawful to strike them with a flashbang. So is the stronger argument here, I'm just trying to...or the strongest argument for Mr. Fatil, or excuse me, for the officers, the strongest argument here that when the officers are being attacked and there's somebody sort of involved in the whole thing, even if that person is not attacking the officers or throwing things at the officers, that it's unclear exactly what officers can do in that circumstance. And using crowd dispersal methods would be one way to make sure that, you know, that the behavior stops, that the crowd stops. It is, Your Honor. And in this case in particular, and the record does show that the...we can certainly question the wisdom of allowing people to gather where they were to begin with. But on that particular corner, 72nd and Dodge Streets in Omaha, Nebraska is a main intersection, and on the particular northeast corner, there's a rock garden. So that's...the officers at some point did cotton to the fact that they needed to be getting people away from a ready supply of debris to rain on them. And so, yes, it would have been very unclear in that situation. Similarly unclear, if I may shift gears, would be whether this was a seizure to begin with. Recently, when it issued the CUP opinion, this court held that seizure is usually force used to apprehend a suspect. There is no question that Mr. Fatil was not a suspect, that he was not apprehended. The issue is intent to restrain, right? Yes. And after May 20th, or May 29th, excuse me, of 2020, when this incident took place, about a year later is when the Supreme Court issued its Torres opinion. The Eighth Circuit, after this opinion, issued the, I believe it's the Cresci opinion, where they established that it is an objective test as to whether conduct manifests an intent to restrain. Every court, barring the court in this case, in this appeal, every court to have wrangled with that issue has applied a totality of the circumstances case. It is a pure law question, so that is one of our main arguments with respect to the seizure piece, is the district court said this is a question of fact, because Riley says he wasn't aiming at him, but he hit him anyway. It's not a question of fact. The court should have reached the law question of whether that manifested an intent to restrain, and every other court to do so has analyzed the totality of the circumstances, and here, the totality of the circumstances is very clear. There was no intent to restrain. Mr. Fatil was struck, but that was it. Nothing, there was no follow-up. He wasn't commanded to stay in place. He doesn't say that there was any effort to make him stay there. The police were purely dispersing. This is a dispersal case, and Mr. Fatil was generally subject to the same dispersal methods as everybody else was around him. Respectfully, I'm at my limit here. I would like to reserve my remaining time for rebuttal, unless there are any questions immediately for me right now. Ms. Boathy? Yes, Your Honor. Good morning, Your Honors. My name is Megan Boathy from Fraser Stryker Law Firm, and I'm here for Appellee Mr. Fatil. I'd like to start with the First Amendment as that goes to jurisdiction. One of the issues here is that Officer Riley has appealed what he describes as a denial of his qualified immunity, and this is an interlocutory appeal. As discussed earlier, the district court didn't actually do a qualified immunity analysis on the First Amendment claim. It just did it on the Fourth Amendment claim. And so, essentially, there can be no appellate jurisdiction because the district court never opened the door to that qualified immunity review. It didn't do prong one or prong two. And case law out of this court states that when a district court doesn't do a qualified immunity analysis, that it hasn't completed its threshold duty, and the proper action is to remand. And this is seen in cases like Ferguson v. Short, which came out of this court in 2016. In that case, a government official appealed the denial of summary judgment, and the lower court's order in that case had laid out the broad principles of qualified immunity but never applied those principles in its ruling. Instead, it read just like a standard summary judgment order. So, we remand. Well, I think... You're saying we have to remand. I think remand is the proper action. I also think this court could just... Come on, answer the question. You're saying we should remand. I think in the court, you find there's a lack of jurisdiction. So, yes, on the First Amendment claim specifically. And then, I was going to ask about that. This is a mixed issue, right? Because the Fourth Amendment claim was analyzed under qualified immunity. So, what do you do when one claim has the analysis and the other claim doesn't? And I think that's a very interesting point. Yes, Your Honor, I agree that the Fourth Amendment was... There was a qualified immunity analysis done, but there are two claims here. And I don't think doing a qualified immunity analysis on the Fourth opens the door for appellate jurisdiction on the First Amendment claim. Because what essentially Officer Riley is asking is for this court to conduct a qualified immunity analysis from scratch and to do both prongs. But that's not the province of an appellate court. Give us a case on this. Come on. We've had so many of these Johnson v. Jones issues in 20 years since... I think there are two on point. Specifically, Ferguson v. Short from 2016. And another one is Welch v. Dempsey from 2022. And that one is actually very on point. That one involved a plaintiff that brought a First Amendment retaliation claim. It arose out of a protest following the death of George Floyd. What's the name again? Welch v. Dempsey. And in that case, the lower court found that the plaintiff had engaged in protected activity. That the use of force by the officer could chill a person of ordinary firmness from continuing the protected activity. And it found that a reasonable jury could determine that the plaintiff's exercise of her First Amendment rights was the but-for cause for the use of force. And in that case, this court found that there was an evidence sufficiency issue. And because of that, it lacked jurisdiction. And it specifically cited that third finding of the lower court. That's not this problem. Well, in this case... It's not even close. That's a classic Johnson v. Jones issue. Well, I would say, Your Honor, in this case, Judge Battalion found that determining whether Officer Riley was motivated by animus is a question of material fact to be left to the jury. And that is the same issue from Welch v. Dempsey. And for that reason, this court declined jurisdiction over the First Amendment claim. But you're saying it wouldn't be appropriate if we were to decide the Fourth Amendment claim and then remand on the First Amendment claim. I'm trying to figure out why that wouldn't, even under your view, why that wouldn't be appropriate. Well, so, yes, that's my position. And I think it's because, I mean, there are just two issues, right? I mean, there are two constitutional issues before this court. And qualified immunity has to be analyzed for each claim because they're different issues, right? Clearly, established law is different under the Fourth Amendment as it is to the First Amendment. So by the court doing the qualified immunity analysis on the Fourth Amendment claim, it did give rise to a proper interlocutory appeal, which is why we're here today. But by not addressing qualified immunity on the First Amendment claim, there's simply no review. And Mr. Dolan mentioned that... How is that different, though? I want to press you on that. Because how is that different than we have claims that are not subject to qualified immunity? Like, let's say there was a wrongful death claim. We don't require the whole thing to come up to decide qualified immunity. It's okay to take them piecemeal. So you might have a Fourth Amendment excessive force claim that comes up on appeal. I don't understand why it would be any different when you have two constitutional claims, where one claim was not really litigated as a qualified appeal before, but the other claim clearly was. I think it comes down to the unique nature of interlocutory appeals. Normally, cases have to proceed to get to the point where they can come before this court. And because qualified immunity is a unique defense that there is an opportunity under Supreme Court law, immunity needs to be decided at the earliest possible juncture. And so that allows government officials to bring interlocutory appeals. But, you know, where the district court hasn't done that analysis, I think, you know, the finding is the proper action is remand. Well, you're almost halfway into your argument, and you haven't defended the district court at all yet. I'm sure the court would not be pleased. Well, I would actually like to defend the court. I believe the court is right on the First Amendment claim, and I can make a few comments on that, and then I'd like to get into the Fourth Amendment. But one of the questions that was discussed with Mr. Dolan was, was he engaged in protected activity? And Mr. Dolan says that when Officer Riley went over to protect the other protesters who were being fired upon with pepper balls, that it's not clear that that's protected activity. And, but I would like to note that when Mr. Fatil does move over to stand in front of the protesters, he is still holding his sign. And I believe that the entire time Mr. Fatil is holding his sign, he's engaged in protected activity. In the video, you never see him put it down. It's with him the entire time. And that sign is important, written on it, and you can see plainly on the video that it has two names on it. It has George Floyd's name on it, and it also has the name Bear Heels. And this is important because Zachary Bear Heels was a Native American who died in custody of Omaha police in 2017. Why is the First Amendment claim more important to Mr. Fatil than the Fourth Amendment claim so that you won't get to? I believe they're equally important, Your Honor. Why? Because I believe the protection of the right to protest is very important and I think it's a particularly important issue right now. So I do believe time should be given to the First Amendment. But I do have a number of things to say on the Fourth Amendment, so if there's no objection... Well, I actually want to ask one more question on the First Amendment. The question I asked opposing counsel. So, and it's very relevant because we're seeing some of this in Minneapolis. The Tinter case that was written a couple weeks ago comes up with this, where you have a mixture of protesters. You have some protesters, and you can see this in the video, who are clearly throwing rocks and water bottles. In fact, one of the officers says, a rock just hit me in the leg. So it's clearly happening. No one disputes that. You have others who are apparently not throwing rocks and water bottles. So I wonder whether it's clearly established that you cannot use crowd dispersal measures when some people are engaged in First Amendment, and they're all together. Some people are engaged in First Amendment activity, but some people are clearly not, and some people clearly were not here. So what do we do in a situation where they're 200 or 300 yards away or whatever the distance are, and you can't tell the difference between them? You don't know who is throwing what. Is there an argument that this is not clearly established? Well, I believe there is clearly established law on use of force against protesters that I'd like to get into. But I do want to say that when you watch the video, you can very clearly see, like I said, Mr. Fittell is holding his sign the entire time. He testifies that he never threw anything at officers. So what is the clearly established law for the mixed environment? So there is case law that says that using force to terminate a person's freedom of movement is a seizure. And this case law that comes out of Broward V. County of Inyo. The case is Broward V. County of Inyo, which is from the United States Supreme Court in 1989. And Torres V. Madrid, the case that gives us the standard about- I'm thinking more along the First Amendment, where you've got a mixture of speech, which is you have some people engaging in protected speech, some people not. Why can't you use crowd dispersal measures when you really can't tell the difference? They're all in a big crowd, like a mosh pit almost. Right. Well, at the time the flashbang is thrown, Mr. Fittell is actually standing alone. So I would say there is no mosh pit. And I think to your point earlier- There's no what? There is no mosh pit. Because when you watch the video, Mr. Fittell is actually standing alone. The crowd around him has dispersed. There's no one within several feet of him. And so- I haven't watched it yet. My law clerk says that's flat wrong. Okay. Well, Your Honor, I would respectfully disagree. I believe the video is very clear. Suppose they are together, though. I mean, I want to pin you down. Suppose they are together and we view the video. Again, why isn't that not clearly established, where you have some people engaged in First Amendment activity and some people not? Your Honor, I believe that the fact is you have to look at the individual who's exercising the First Amendment activity. And here, there's no question, viewed in a light most favorable to Mr. Fittell, that he was- I don't think our Republican Convention case out of St. Paul just makes that clearly wrong. Well, I think, Your Honor, that here, the district court- They took a whole group that was disrupting all kinds of things, and they moved the group. All the group wasn't violent or disruptive. But en masse, they were. And so we upheld moving the whole group, regardless of- I think they found a plaintiff who could say, I wasn't doing nothing. I was just standing there watching and enjoying it. Well, I think there are two other issues on the First Amendment retaliation analysis. We're trying to get an answer clearly established. It seems to me the St. Paul case makes- trumps whatever you're talking about. Your Honor, in that case, I would stand on the briefing, and I would return to- That case isn't cited in your brief. Well, I believe our brief does address the First Amendment claim in relation to whether it addresses the St. Paul case or not. And I do believe that this case- That controls our panel. You can go find all of the circuits around the country saying we're wrong. Take that to the court and bank. I understand, Your Honor. I think I would return to- I believe that there is a lack of appellate jurisdiction on the First Amendment claim. As it relates to the Fourth Amendment, the standard is an objective- Whether the circumstances show an objective manifestation of an intent to restrain. Earlier, there was a reference to whether it's just an intent to restrain. And I believe it's important to emphasize that the Fourth Amendment is an objective standard. And Torres says that. And Torres also says that courts rarely probe the motivations of officers in the Fourth Amendment context. So I think Riley's statement that he intended to disperse the crowd alone is that sort of subjective motivation that this court should not consider as, you know, the end-all, be-all that has to look at the other facts. I don't disagree with you, but we just said in Haidt, it was two or three weeks ago, it was the case where I was the author, where an officer shot at a dog and hit the woman, the homeowner. And we said, what are the objective manifestations as to seizure? And if you look at it, the statement, in my view, given the video, is completely consistent with what happened, which is he made no attempt to seize Mr. Fatil. He basically fired it and ignored Mr. Fatil afterwards. So I guess I don't understand what evidence there is that he was trying to seize Mr. Fatil. Thank you. I would like to address that. So he, through the flashbang was thrown, Mr. Fatil was standing relatively alone. The crowd has kind of moved feet away from him, as I stated earlier. And after the flashbang detonates, Mr. Fatil is only able to make it a few feet before he collapses. He's rendered unconscious. He has a cut to his head. And I believe by terminating his freedom of movement that a seizure occurs. But even accidents, we said in Haidt that even accidents don't constitute a seizure. In other words, we have the firing, and I guess we've got to figure out if that's enough to seize. But just to be clear, there's no other evidence that he was trying to seize him. He doesn't go after him. He doesn't put him in handcuffs. He doesn't push him down. None of the officers pay attention to Mr. Fatil after the flashbang. Am I right about that? I agree with that, Your Honor. And I think that's where Broward v. County of Inyo is instructive because it talks about the termination of a freedom of movement. And that's also discussed by the Ninth Circuit in Nelson v. City of Davis in 2012, which involves dispersal of a party of about a thousand people. And there, the Ninth Circuit rejected the argument that firing into the crowd with the intent to disperse doesn't constitute a seizure. Because the Ninth Circuit found that regardless of the motives of the officers, their application of force was knowing and willful, and it terminated the plaintiff's movement. He collapsed. He was later taken to the hospital. And in that case, he was never arrested, taken into custody, charged. I think that's comparable here. And there's other case law similar to that. If you don't mind, may I just name those cases real fast? Marbet v. City of Portland, which comes out of the District of Oregon. Are they in your brief? They are not, Your Honor. It's supplemental authority that I believe goes to clearly established. I will, Your Honor. Thank you very much. All right, Bob. Your Honors, to begin with, on the seizure issue, the Nelson case out of the Ninth Circuit is an apposite. Because in that case... Is what? The Nelson case... I know, but you had a... An apposite. It doesn't apply here, Your Honor. I apologize. I was looking down at my notes. In that case, one of the most significant factors that the Ninth Circuit hung its hat on was that the people were outside in an already confined space in an apartment hallway. There was nowhere for them to go. They were already bottled up. And the police fired into that crowd. In this case, the intersection of 72nd and Dodge Street is not a confined space. And dispersing people from a rock garden is very far from factually similar to firing pepper balls or tear gas canisters into an apartment hallway. So Nelson surely would not have clearly established the law such that a reasonable person in Officer Riley's position would have known that deploying the flashbang constituted a seizure. With respect to the seizure piece, Your Honor, it's as briefed. The district court stands alone throughout the Eighth Circuit, including the Eighth Circuit itself, in holding that contact alone may manifest an intent to apprehend or restrain. Why shouldn't a jury decide the question whether Riley threw the flashbang at Fittell as opposed to at the ground? Your Honor, that can be accepted. That goes to the reasonableness of the force. But reasonableness... Well, it goes to their intent to restrain. Absolutely, it goes to the intent to restrain. Your Honor, it is... Respectfully, Your Honor... If you fire... We have cases where you fire a gun in the air to scare somebody. That's not a seizure. If you fire the gun at them, it is. Well, Your Honor, the use of deadly force is carved out of the objective manifestation test. Well, I think there's a question there, too. Well, but as to the question, Your Honor... Deadly force versus force that can clearly cause serious bodily injury. This court's precedent forecloses, and Torres suggests, we don't look at Riley's subjective intent. So even if he was aiming at Mr. Fittell... Intent to restrain. There has to be an intent to restrain. Then you're looking at his subjective intent, Your Honor, in which case there is his testimony that he wasn't, that he threw it and it took a crazy bounce. Why isn't that a jury question? But, Your Honor... I know it's... In bottom line, it's an objective test, but it has a subjective element. It is also one circumstance in a totality of circumstances, and the intent to restrain requires more. He was struck with the flashback. I don't think so, Kyle. I mean, you could say that, but the case law absolutely refutes that. Your Honor, in Dundon versus Kirchmeier, this... I don't care what case you've got where you spin out all kinds of factors. If we've got cases such as the guy with a knife on a porch, where there was an intent to restrain when they restrained him. Your Honor, in Dundon versus Kirchmeier, the plaintiff was shot in the head with a flaming tear gas canister that had been fired from a cannon. And I'm going to run over my time, but I would like to finish addressing this. And this court found that that was not a seizure because none of the elements of an intent to restrain were met. The person did stagger away. They were injured, but they weren't arrested. They weren't commanded to stay in place. Was there a subjective intent to fire it at the plaintiff? Your Honor, I don't know that there was a subjective intent to hit the plaintiff. However, when you are talking about that... Judge, you're done. Judge, I have another question. I just have the one question, the jurisdictional question that was raised by opposing counsel. You admit that you didn't bring up the excessive force claim, I believe, before the district court as to qualified immunity. The protected activity. Oh, the protected activity. Okay, got it, got it. And so opposing counsel makes the argument that there's no jurisdiction because of that failure. Your Honor, I believe the argument as to no jurisdiction is because the district court's seizure analysis does do both steps of qualified immunity. Admittedly, its First Amendment analysis does not talk about qualified immunity. However, it did the first step of the qualified immunity analysis even though it never used qualified immunity analysis. It found that there was First Amendment retaliation. What remains is just a pure law question as to whether or not the law was clearly established at the time that Riley would have known, I'm violating the First Amendment by doing this. And that's a pure law question that doesn't really require remand. When the district court did, without using the magic words, it did half of the analysis. If there's nothing further, then I appreciate your... Thank you, counsel.